1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
8              FOR THE EASTERN DISTRICT OF CALIFORNIA
9

10   UNITED STATES OF AMERICA,                   No.  1:02-cr-05179-NONE-1

11              Plaintiff-Respondent,

12       v.                                       ORDER GRANTING UNOPPOSED
                                                  PETITION FOR WRIT OF ERROR CORAM
13   CRISTOBAL RAMOS-QUIROZ,                      NOBIS SUBMITTED AS PETITION
                                                  UNDER 28 U.S.C. § 2255
14              Defendant-Petitioner.
                                                  (Doc. Nos. 27, 30)
15

16

17          On July 20, 2020, Cristobal Ramos-Quiroz ("petitioner"), a former federal prisoner

18   proceeding pro se, filed a petition to vacate, set aside, or correct a sentence under 28 U.S.C.

19   § 2255.  (Doc. No. 27.)  Therein, petitioner alleges that his 2002 conviction for illegal reentry into

20   the United States in violation of 8 U.S.C. § 1326 was predicated on an unlawful removal.  (*Id*.)

21   After the court requested briefing, the government submitted a reply on October 6, 2020, stating

22   its non-opposition to the granting of the petition.  (Doc. Nos. 28, 34.)  For the reasons that follow,

23   the court construes the petition as a request for a writ of error coram nobis, GRANTS the writ,

24   and VACATES petitioner's judgment of conviction and sentence in this case.

25                                    **BACKGROUND**

26          On May 14, 2002, a two-count complaint was filed with this court against petitioner that

27   included a charge of illegal reentry of a removed alien into the United States in violation of 8

28   U.S.C. § 1326.  (Doc. Nos. 1, 21.)  On May 16, 2002 a grand jury indictment was returned

charging him with those same offenses.  (Doc. No. 5.)  On September 9, 2002, petitioner pled guilty to the illegal reentry charge, and on December 2, 2002, the court entered a judgment of conviction and sentenced petitioner to seventy-seven months in the custody of the U.S. Bureau of Prisons (BOP) to be followed by thirty-six month term of supervised release.  (Doc. Nos. 13, 17, 21.)  Petitioner's sentence and supervised release expired before he filed his petition now pending before the court.

In October 2016, petitioner, proceeding *pro se*, successfully reopened his 1998 removal case that formed the basis of his 2002 criminal conviction for illegal reentry.  (Doc. No. 34 at 1, 7.[1])  In his motion to reopen, petitioner argued that he was not informed of his eligibility for certain relief from removal during his 1998 removal proceedings.  (*Id.*)  After considering the facts and circumstances of the case, the immigration court found that petitioner had "met his burden to demonstrate unusual or outstanding equities warranting a favorable exercise of [the immigration court's] discretion."  (*Id.* at 16.)  The immigration court granted relief from the 1999 removal order in a decision dated July 30, 2020.  (*Id.* at 17.)  In addition to the criminal conviction for illegal reentry which petitioner suffered in 2002, the 1999 removal order resulted in a domino-series of far-reaching consequences for him.[2]  (Doc. Nos. 1 at 4; 34 at 1, 10.)  After receiving his favorable decision from the immigration court in July 2020 setting aside the removal order, petitioner was released from the custody of Immigration and Customs Enforcement.  (Doc. No. 31.)

On July 20, 2020, petitioner filed the petition in this case to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255.  (Doc. No. 27.)  On July 29, 2020, he filed another petition with the same label but with an added handwritten note "and writ for coram nobis."  (Doc. No. 30 at 1.)  The second purported petition raises generally the same substantive ground for relief—that

---

[1]  Page numbers refer to a page or pages within the entire document or filing, e.g. page 7 of 18 total pages in the government's response to the petition.

[2]  Among the consequences, petitioner was removed from the United States in 2008 after he served his sentence in this criminal case.  (Doc. No. 34 at 10.)  He reentered the country a second time in 2016 and was apprehended and placed in removal proceedings before the series of events related to this petition began to unfold.  (*Id.* at 7 n. 2, 10.)

2

petitioner's criminal conviction for illegal reentry rested upon an unlawful removal order.  (*Id.* at 3.)  While petitioner did not append the immigration court's July 2020 decision to his petition, the government has provided a copy.  (Doc. No. 34 at 4–18.)

The government submitted a response to the pending petition on October 6, 2020, in which the government stated that "in the interests of justice," it "does not oppose [the] petition." (Doc. No. 34 at 1.)  Petitioner did not file a reply.

## LEGAL STANDARD

"A writ of error coram nobis 'affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody' " and "aids 'those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors.' "  *United States v. Kroytor*, 977 F.3d 957, 961 (9th Cir. 2020) (quoting *United States v. Kwan*, 407 F.3d 1005, 1009–10, 1011 (9th Cir. 2005), *abrogated by Padilla v. Kentucky*, 559 U.S. 356 (2010)).  "Where the errors are of 'the most fundamental character,' such that the proceeding itself is rendered 'invalid,' the writ of coram nobis permits a court to vacate its judgments."  *Estate of McKinney v. United States*, 71 F.3d 779, 781–82 (9th Cir. 1995) (quoting *Hirabayashi v. United States,* 828 F.2d 591, 604 (9th Cir.1987)).

The Supreme Court has described coram nobis as an "extraordinary remedy" to be granted "only under circumstances compelling such action to achieve justice."  *United States v. Morgan*, 346 U.S. 502, 511 (1954).  A petitioner seeking coram nobis relief must demonstrate:  " '(1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.' "  *Estate of McKinney*, 71 F.3d at 781–82 (quoting *United States v. McClelland,* 941 F.2d 999, 1002 (9th Cir. 1991)).

## ANALYSIS

In this case there are two preliminary matters to address.  First, petitioner ostensibly filed two petitions for relief a little more than a week apart.  (Doc. Nos. 27, 30.)  The substantive ground raised in both is identical (the unlawful nature of petitioner's 1999 removal), but in his

1   second petition, petitioner appears to raise additional arguments under federal administrative law

2   and California state law that are difficult to parse, and he addresses other, ancillary issues such as

3   payment of the filing fee.  (*See* Doc. No. 30.)  To the extent that petitioner raises the same

4   substantive ground for relief, the filings are duplicative and the court designates the first filed

5   petition as the operative petition.  To the extent petitioner seeks to raise additional arguments, the

6   second petition is not in compliance with Local Rule 220.  Nonetheless, further instruction to

7   petitioner on amending the petition is unnecessary for the court to reach the merits of the action.

8        Second, petitioner's sentence and supervised release terms are expired.  Because he was

9   not in custody on this case at the time of his filing of the pending petition, petitioner cannot

10  receive relief under 28 U.S.C. § 2255.  Federal courts, however, may "ignore the legal label that a

11  *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a

12  different legal category."  *Castro v. United States*, 540 U.S. 375, 381–82 (2003).  Courts "may do

13  so in order to avoid an unnecessary dismissal," "to avoid inappropriately stringent application of

14  formal labeling requirements," "or to create a better correspondence between the substance of

15  a *pro se* motion's claim and its underlying legal basis."  *Id*.  Given the circumstances of this case,

16  including the government's non-opposition to the petition and petitioner's passing reference to

17  coram nobis relief in his second filing, the court will construe the petition as one seeking a writ of

18  error coram nobis, which avoids an unnecessary dismissal and creates a better fit between the

19  substance of petitioner's claim and its underlying legal basis.  *See also United States v. Eatinger*,

20  902 F.2d 1383, 1385 (9th Cir. 1990).

21       The facts and circumstances of petitioner's claim satisfy each of the four factors to be

22  considered when granting or denying coram nobis relief.  First, no other avenue for relief is

23  available to petitioner at this point, and second, it is clear that petitioner has a quite valid reasons

24  for not attacking his illegal reentry conviction sooner.  Petitioner could not attack this conviction

25  on the basis of the unlawful removal until he discovered the error in his 1998 removal

26  proceedings and finally received relief from the 1999 order from the immigration court in July of

27  2020.  Before that, this court could not have granted relief on a bare allegation that the predicate

28  removal was unlawful.

4

1    Additionally, petitioner was represented by counsel when he pled guilty in this case, and

2    petitioner continued to be represented by counsel as he challenged this conviction on direct

3    appeal to the Ninth Circuit and in requesting review from the Supreme Court. *See United States*

4    *v. Ramos-Quiroz*, 71 F. App'x 673 (9th Cir. 2003); *Ramos-Quiroz v. United States*, 540 U.S.

5    1025 (2003) (denying certiorari). He presumably consulted with counsel and received counsel's

6    advice throughout, and nothing in the record suggests that the lawfulness of the predicate removal

7    was questioned or contested at the time of petitioner's plea or thereafter. In short, it seems no one

8    suspected or pursued any claim of error in the predicate removal order.

9    Third, adverse consequences from a conviction are presumed. The Ninth Circuit has

10   "repeatedly reaffirmed the presumption that collateral consequences flow from any criminal

11   conviction." *Hirabayashi v. United States*, 828 F.2d 591, 606 (9th Cir. 1987). Further:

12

13   > In this day of federal sentencing guidelines based on prior criminal
>    histories, ...   and   state   repeat   offender   provisions, ...

14   > the *Hirabayashi* presumption is an irrebuttable one. Once
>    convicted, one remains forever subject to the prospect of harsher

15   > punishment for a subsequent offense as a result of federal and state
>    laws that either already have been or may eventually be passed.

16

17   *Chacon v. Wood*, 36 F.3d 1459, 1463 (9th Cir. 1994), *superseded on other grounds by* 28 U.S.C.

18   § 2253(c). "[R]elief is available to prevent manifest injustice 'even where removal of a prior

19   conviction will have little present effect on the petitioner.' " *Hirabayashi*, 828 F.2d at 606

20   (quoting *Holloway v. United States,* 393 F.2d 731, 732 (9th Cir. 1968)).

21   Here, the consequences from the criminal conviction in this case have reverberated in

22   petitioner's life more than once and could theoretically do so again in the future. Those

23   consequences have often been inextricably linked with his initial removal in 1999 and are

24   difficult to parse separately. For example, petitioner was removed from the United States for a

25   second time after serving the sentence imposed in this case. (Doc. No. 34 at 7 n.2.) Petitioner

26   likewise has had contacts with the state criminal court system since suffering the conviction in

27   this action, though it is unclear whether those contacts have resulted in any new criminal

28   convictions. (*Id.* at 14.) Regardless, the risk of an increased penalty, whether that penalty has

5

manifested or not, is exactly the type of adverse consequence contemplated by the Ninth Circuit in *Chacon* and *Hirabayashi*. *Chacon*, 36 F.3d at 1463; *Hirabayashi*, 828 F.2d at 606.

The immigration court's framing of the "cumulative effects of [petitioner's] two improper removals from the United States" included adverse impacts that are not relevant to coram nobis relief, but the framing is still worth noting:

> [Petitioner] was first removed in 1999, after an Immigration Judge failed to inform him of his eligibility for relief pursuant to former INA section 212(c). After his removal, he reentered the United States without permission. He was charged with illegal reentry in violation of 8 U.S.C. § 1326, was subsequently convicted, and was sentenced to seventy-seven months in federal prison for that offense. … (The fact that he was convicted of illegal reentry, and incarcerated for approximately five years, when he should not have been removed in the first place, is perhaps the centerpiece of the injustice embedded in his story.) [Petitioner] was removed to Mexico again after he was released from federal criminal custody. [Petitioner's] initial improper removal in 1999 has resulted in a sequence of events, the negative impact of which is difficult to overstate. He testified that his relationship with his children suffered because he was either in Mexico or incarcerated for most of their childhood. He also testified that he has experienced difficulty finding employment because he has not accrued significant work experience. He has endured homelessness in both the United States and Mexico.

(Doc. No. 34 at 16.)

Fourth, the fundamental nature of the error in this case is clear. Coram nobis relief is "available to bring before the court that pronounced the judgment errors in matters of fact which had not been put in issue or passed upon and were material to the validity and regularity of the legal proceeding itself." *United States v. Addonizio*, 442 U.S. 178, 186 (1979) (quoting *United States v. Mayer*, 235 U.S. 55, 68 (1914)); *McClelland,* 941 F.2d at 1003 ("Clearly, the requirement that the Government prove beyond a reasonable doubt every element of the charged offense is of the most fundamental nature."); *see also United States v. Balderama-Aguilar*, No. 08-cr-3134-LAB, 2018 WL 4489661 (S.D. Cal. Sept. 18, 2018) (granting coram nobis relief to a petitioner who pled guilty to and completed a sentence for illegal reentry after the petitioner discovered she is and was a citizen at all times). Petitioner, a lawful permanent resident prior to

his removal, was not advised of the availability of relief from removal under certain provisions of immigration law during his 1998 removal proceedings.  But for that predicate error from which his criminal case flowed, petitioner may not have been charged with illegal reentry, convicted, and incarcerated for a significant period of time.[3]  Petitioner has now been granted relief from his 1999 removal order based on error, and for that reason, the continuation and reification of that error that occurred in these criminal proceedings cannot stand.

The government submits that it is in the interest of justice to grant this petition, and the papers support that position.  Petitioner's illegal reentry conviction in this case is therefore vacated.[4]

**CONCLUSION**

For the reasons set forth above, the court ORDERS as follows:

1.   The court construes petitioner's first filed petition (Doc. No. 27) as a petition for writ of error coram nobis and designates it as the operative petition;

2.   The court GRANTS the writ for error coram nobis; and

3.   The court VACATES the judgment of conviction in this case.

IT IS SO ORDERED.

Dated:   __**January 15, 2021**__                    _____
                                                                        UNITED STATES DISTRICT JUDGE

---

[3]  The court recognizes that the immigration judge, in granting petitioner relief in July 2020, considered facts from a timeframe dating prior to petitioner's 1999 removal and stretching through the present, as was appropriate.  That timeframe encompasses more than an immigration court's review would have in 1998 and 1999, and thus, the immigration court's determination at that time, had petitioner been apprised of the available relief, may not have resulted in the same outcome.  But it is not for this court to speculate in that regard.

[4]  Just prior to the filing of this order, the court received a lengthy email from petitioner, apparently supporting the granting of his request for relief and mentioning other matters such as his desire to seek the award of damages.  That communication was not properly filed and thus is not before the court for action or determination.  The court notes, however, that this order renders many of the issues raised in that communication moot and other issues raised therein (a desire to seek the award of damages) are not placed at issue in this action and need not be addressed here.